## Cohn's Estate.

*Wills — Construction — Bequest of stock — Agreement to sell stock made prior to date of will.*

A bequest of "my stock in any company I may hold" includes the stock in a company which the testator agreed, prior to the date of his will, to sell where the agreement provided that the stock was not to be delivered until at least $200,000 of the purchase price should have been paid, and was to be held meanwhile by trustees, who were to deliver it to the vendor if the vendee defaulted or, at the option of the vendor, to deliver it to the vendee, so that the vendor might then sue for the balance of the purchase price.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1926, No. 535.

*Furth, Singer & Borton,* for exceptants; *William A. Gray,* contra.

THOMPSON, J., July 15, 1927.—Testator died July 12, 1924, and in a brief homemade will, dated May 28, 1924, gave to his sister, as well as to his

children, "my stock in any company I may hold," a copy of said will being as follows:

"All my life insurance that is made payable to my estate and my stock in any Company I may hold, I hereby leave in trust for the benefit of my sons Sam M., Ben E., Clarence and Myron, also my sister Sara, and I hereby appoint my sons Sam M. and Ben E. as the trustees.

"5/28/24　　　　　　　　　　　　　　　(Sgd)　　HARRIS J. COHN."

In addition to other stocks, there were certain shares in an amusement company, which, previous to the date of the will, he had agreed in writing, dated Aug. 24, 1921, as hereinafter set forth, to sell to the Stanley Company of America. The Auditing Judge held that the testator's rights therein came within the description "stock." The exceptants claim that the decedent no longer held stock, but only a claim as a creditor, with the stock assigned as collateral.

The question is, under all the circumstances, what did the testator mean by the words "my stock in any Company I may hold?"

A copy of the agreement above referred to is as follows:

"This Agreement made and concluded this 24th day of August, 1921, by and between Allegheny Amusement Company, a corporation (hereinafter called Allegheny), Party of the first part, and Harry L. Cantor, Harris J. Cohn, Joseph E. Cohen and Morris Menkus (hereinafter called Cantor et al.), Parties of the second part, and Stanley Company of America, a corporation (hereinafter called Stanley), Party of the third part, Witnesseth,

"Allegheny is a corporation chartered under the laws of the State of Pennsylvania, with a capital stock of Forty thousand dollars,, divided into four hundred shares of the par value of One hundred dollars each, One hundred shares being owned by each of the four persons named as parties of the second part, Allegheny being the owner in fee of the premises known as Allegheny Theatre, having leased the same to the Allegheny Theatre Company.

"Cantor et al., being the owners of all the said stock, agree to sell the same to Stanley for the total consideration of Three hundred and Fifty thousand dollars, each of the four parties of the second part to receive the sum of Eighty-seven thousand five hundred dollars, the sum of Twenty-five hundred dollars to be paid to each of the parties upon the execution of this agreement, and the further sum of Twenty-five hundred dollars every six months thereafter for a further period of seventeen and one-half years, Stanley to have the right, after the sum of Two hundred thousand dollars has been paid on account, to pay the balance then due and demand the delivery of the shares of stock. The said stock in the meanwhile is to be assigned to and held by Max Herzberg, representing Cantor et al., and Morris Wolf, representing Stanley, In Trust to vote the same and to assign to Stanley or re-assign to Cantor et al. the said stock in accordance with the terms of this agreement. In the event of the death of either the said Max Herzberg or Morris Wolf, or of his refusal, neglect or inability to act, or for any other reason, the parties represented by either the said Herzberg or Wolf, who desire to have a new Trustee to represent them, they, the said parties, shall have the right or privilege to nominate, appoint and substitute any other person to act for and in place of their representative above named.

"The lease to the Allegheny Theatre Company is to be surrendered and canceled and a new lease is to be made by Allegheny to Stanley for a period of seventeen and one-half years from the Fifteenth day of August, 1921, at a rental for the first six months based upon six per cent. of Three hundred

and forty thousand dollars, and thereafter six per cent. upon the balances thereof as shown semi-annually as payments are made to Cantor et al., the rentals being paid in advance, Allegheny to have the option of canceling the said lease in default of payment of the rentals or in default of the payment of the amount stipulated to be paid on account of the purchase price of the said stock, Stanley, in addition, to pay as rental all taxes, water rents and fire insurance upon the said premises, the rent and taxes for the first six months to be apportioned for the year 1921 as of August 15, 1921, the fire insurance now existing to be apportioned.

"Stanley agrees to keep the building in good repair and to make all required changes and alterations. On delivery of the said shares of stock after the payment in full thereof, vendors agree that the real estate belonging to the Allegheny shall be free and clear of all encumbrances and that there shall be no debts or liabilities of Allegheny and that they and each of them will indemnify and save harmless Stanley of and from all debts or liabilities of Allegheny, including claims for State and Federal taxes due, owing or payable at the time of such final delivery on the said stock, such taxes for the current year in which such delivery shall be made to be apportioned.

"In the event of the default of Stanley of any semi-annual instalments agreed to be paid for the stock, Cantor et al., after sixty days from the time of such default, shall be privileged to retain all the moneys so paid as liquidated damages for Stanley's failure to perform all the terms of the agreement, and to declare this agreement abrogated, canceled and ended or, at the option of the said Cantor et al., they may proceed to recover forthwith the entire balance which shall, in the event of such default, become immediately due and payable notwithstanding the other terms herein contained.

"Cantor et al. and Allegheny agree not to sell, charge or encumber the property of the said Allegheny without the consent or approval of Stanley, and that until said stock shall have been fully paid Cantor et al. shall continue as the Board of Directors and officers of Allegheny.

"It is further understood and agreed that at the time of the final transfer of the stock, the entire assets of Allegheny will consist of the Allegheny Theatre, with its contents and appurtenances, free and clear of all encumbrances, liabilities, debts or charges.

"In witness whereof, Allegheny and Stanley have respectively caused to be hereunto affixed their common or corporate seals duly attested, and Cantor et al. have set their respective hands and seals, this day and year first above written.                     ALLEGHENY AMUSEMENT COMPANY    (Seal)
"Sealed and delivered in                        Harry L. Cantor, President
    the presence of Max Herzberg       Attest   Joseph E. Cohen, Secretary
                                                 Harris J. Cohn      (Seal)
                          .                      Harry L. Cantor     (Seal)
                                                 Joseph E. Cohen     (Seal)
                                                 Morris Menkus       (Seal)
                          STANLEY COMPANY OF AMERICA                 (Seal)
                                                 Jules Maustbaum, President
                          Attest   Morris Wolf, Secretary"

We have set forth the agreement in full, for, in our judgment, it clearly indicates that, as between the parties thereto, the vendors were to continue in possession and control of the amusement company, serving as directors and officers and distributing among themselves whatever income or profit the stock earned, with the same force and effect as if the agreement had not been

Cohn's Estate.

entered into. The stock contracted to be purchased by the vendee was not to be delivered to it until at least $200,000 of the purchase price was paid, and in the meantime it was to be held by two trustees, one representing the buyer and the other the seller, who apparently had nothing to do with the same except to vote it, and, in the event of default on the part of the vendee, to deliver the same to the vendors, or, at his option, deliver the same to the vendee, and the vendor could then sue the vendee for the balance of the purchase price. The exceptants contend that there was a delivery of the stock to the vendee and a redelivery to the vendor as security for the balance of the purchase price, or a retention of title in the vendor as security only. This is directly contrary to the express terms of the contract, which provides that there was to be no delivery until at least $200,000 was paid. Furthermore, the theatre, which was the only asset of the amusement company, was to be leased to the vendee at a substantial rental, which is confirmatory of the ownership of the vendors in the stock and the theatre, as the vendee was in possession of the theatre under a lease and not under the contract of purchase of stock. The account shows collection of income from the amusement company, which doubtless represents the interest on the unpaid purchase price or rent, as it is represented by counsel that the theatre is the only asset of the amusement company, thus showing that the vendors received and distributed among themselves whatever the stock of the amusement company produced as owners, and not on account of the purchase price. Under these circumstances, it is clear that the testator, at the time he made his will, regarded himself as owning the stock in question.

Through an inadvertence, the Auditing Judge awarded the widow one-half of the balance for distribution, she having elected to take against the will. As the testator left four children, this should have been one-third, and the adjudication is modified to this extent.

Exceptions four and five were withdrawn and all others are dismissed, and the adjudication, as above modified, is confirmed absolutely.

Henderson, J., did not sit.